IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL AMAYA, #R72828, <br><br>        Plaintiff, <br><br> v. <br><br> DAVID MITCHELL, <br> SCOTT THOMPSON, <br> JEFFREY DENNISON, <br> JOHN DOE 1, *Bureau of Investigation Employee,* <br> MAC SHANE FRANK, <br> CHARLES HECK, <br> BRADLEY KIRKMAN, <br> M. BAILEY, <br> JOHN DOE 3, *Confidential Informant,* <br> JOHN DOE 4, *Segregation Officer,* <br> COUNSELOR REID, <br> COUNSELOR RODELY, <br> DIANE SKORCH, <br> SHANE MERCIER, <br> REBECCA KING, <br> ROB JEFFREYS, and <br> CHALENE HALE, <br><br>        Defendants. | Case No. 21-cv-01707-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      Plaintiff Daniel Amaya, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief

must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Amaya alleges the following: On November 4, 2019, while housed a Pinckneyville, he was sent to the property department to pack up his property in preparation for a temporary transfer to Stateville Correctional Center ("Stateville") on a court writ. (Doc. 1, p. 9; Doc. 1-1, p. 1). While going through Amaya's legal papers, Correctional Officer Bailey saw and opened an manilla envelope labeled "orange crush lawsuit." Bailey told Amaya that the events alleged in that lawsuit did not happen, and he knew the officer involved "wouldn't do anything like that." Amaya ignored the comment and informed Bailey that he was to take all of his legal work with him and that a large amount of his legal work was in the law library. Bailey assured Amaya that everything would be packed and told Amaya to sign the property papers. (*Id.*).

Amaya then went back to his housing unit and requested to go to the law library that afternoon. (Doc. 1, p. 9). He had a law library pass for the morning session but could not go since he had been in the property department packing his property for his transfer. Lieutenant McBride arranged for him to go to the law library. When he arrived, he was told not to sign the sign-in sheet. (*Id.* at p. 10). Amaya had to stay in the law library for the entire afternoon session. When he was allowed to leave, he tried to take his legal property to Correctional Officer Bailey but was told Bailey had left for the day. Amaya took his legal work with him back to his housing unit. (*Id.*). The next morning, in the presence of his cellmate, Amaya handed his legal property to Bailey. (*Id.* at p. 11). He did not receive any paperwork documenting the legal property but was told that the property sheet said he "was to take all legal work." When he arrived at Stateville, he was given only some of his property, and a large amount of his legal work was missing. (*Id.*). Amaya refused

to sign any property receipts since he did not receive all of his property. Eventually, personnel at Stateville found some of the missing property, which was damaged, but a large amount of legal work remained missing. Upon his return to Pinckneyville, Amaya was forced to sign property sheets to receive his property. He informed officers of the lost property. He was told to file a grievance regarding any discrepancies. (*Id.*).

Amaya wrote several grievances, and his allegations were investigated. (Doc. 1, p. 12). The investigation, however, was not properly conducted. Amaya tried to inform Lieutenant Frank from Internal Affairs of the orange crush lawsuit comment made by Bailey, but Frank said the comment was irrelevant. Frank also stated that there was no evidence that Amaya went to the law library to gather his legal documents on the afternoon of November 4, 2019. Frank is believed to have a practice of failing to fully investigate complaints made against fellow staff members. He is known to ignore statements cellmates and not preserve video footage. (*Id.* at p. 13). There is also a practice at Pinckneyville in which an inmate will file a grievance regarding staff conduct, the reviewing counselor will tell the correctional officers that an inmate complained about their conduct, and the correctional officers then retaliate against the inmate. (*Id.* at p. 13-14).

In April 2020, after continuing to write grievances regarding the loss of his property and retaliation by Bailey, Amaya was placed in segregation under investigation. (Doc. 1, p. 14; Doc. 191, p. 31). Prior to the hearing, on May 21, 2020, Amaya was given a copy of the disciplinary report, but he was not allowed to write down the list of witnesses he wished to call. (*Id.* at p. 43). According to the disciplinary report, Amaya was charged with violating state or federal laws, impeding or interfering with an investigation, and intimidation. (Doc. 1-1, p. 34). It was alleged that Amaya wrote a grievance in which he falsely accused Bailey attempting to bribe Amaya to drop lawsuits in exchange for a pair of headphones. (*Id.* at p. 34, 46, 62).

At the hearing before Adjustment Committee members Heck and Kirkman, on May 26,

2020, it was announced that Amaya was not given an opportunity to write any witnesses down on his disciplinary report. (Doc. 1, p. 16). Heck and Kirkman asked Amaya who he wanted to call as a witness. Amaya responded with several witnesses, including the attorney for the orange crush lawsuit and the inmates in neighboring cells. (Doc. 1, p. 16). Heck told Amaya he could have one witness. Amaya selected Jesus Jimenez, his previous cellmate. Jimenez was interviewed by Internal Affairs, and Jimenez told the officers that he had heard part of the conversation between Amaya and Bailey, but Frank would not allow Jimenez to elaborate because the issue before the Adjustment Committee was a separate incident. (*Id.*). Amaya was sentenced to segregation, loss of commissary, and demoted to C-grade and B-grade status. After serving his entire sentence, the disciplinary report was eventually expunged by the Administrative Review Board. (*Id.* at p. 20; Doc. 1-1, p. 85).

While Amaya was in segregation, Bailey continued to harass and threaten him. (Doc. 1, p. 17). Bailey tried to incite other inmates to harm Amaya and showed five inmate workers information about Amaya on the computer. Bailey also refused to give Amaya a property box for his excess legal work.

**PRELIMINARY DISMISSAL**

Amaya claims that the "entire Internal Affairs Unit comprises of Caucasians who vehemently target people of color and favor white Caucasians mainly white supremist…rarely if ever [do white supremacist] get African American cellmates…practices are encouraged by the facility to further promote division from whites and colored people." (Doc. 1, p. 19). To the extent Amaya is attempting to proceed on a claim for racial discrimination in violation of the Fourteenth Amendment, the claim is dismissed. Amaya does not associate this allegation with any individual Defendant or specific conduct on the part of a Defendant and conclusory allegations such as this are insufficient to state a claim.

Amaya describes John Doe 1 as a Bureau of Investigation employee. (Doc. 1, p. 3). Amaya asserts that Lieutenant Frank uses staff, including John Doe 1, "to intimidate individuals who seek redress from offending officers and who access the grievance process excessively." (*Id.* at p. 18). However, the only conduct Amaya describes on the part of John Doe 1 is that John Doe 1 fingerprinted Amaya when Amaya arrived in segregation and told Amaya that he did know the charges against Amaya and was following Lieutenant Frank's orders. (*Id.* at p. 15). This does not describe any kind of constitutional violation caused by John Doe 1. Accordingly, John Doe 1 is dismissed without prejudice.

Throughout the Complaint, it appears Amaya takes issue with the fact that his grievances and complaints were not investigated or handled correctly. (Doc. 1, p. 12, 13, 15, 18, 19). Specifically, he claims that Lieutenant Frank (1) failed to properly investigate the issue of his lost property and the disciplinary report against him; (2) refused to report and investigate his complaints against Bailey pursuant to the Prisoner Rape Elimination Act ("PREA"); and (3) "stonewalled" the grievance procedure. (*Id.* at p. 12, 17). Amaya also states that Counselors Rodely and King "investigated allegation of lost property to no satisfaction or remedy to outcome." (*Id.* at p. 12.).

The Constitution does not require a grievance procedure, and "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Further, prison officials are not required to investigate or otherwise correct wrongdoing after it has happened. "Only persons who cause or participate in the [Constitutional] violations are responsible" for those violations, failure to investigate or ruling against a prisoner's grievance "does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (citations omitted). *See also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). And finally, PREA "does not give prisoners a personal right to

sue for an official's failure to comply with the Act's requirements." *See Summers v. Waggoner*, No. 19-cv-01338-SMY, 2020 WL 6321488, at *3 (S.D. Ill. Oct. 28, 2020) (collecting cases).

Thus, to the extent Amaya is attempting to hold Defendants liable solely for failing to investigate or for denying his grievances, such claims are dismissed.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Civil conspiracy claim against Defendants for conspiring to deny Amaya his constitutional rights.

**Count 2:** First Amendment claim against Defendants for violating Amaya's right to access the courts by confiscating his legal documents.

**Count 3:** First Amendment claim against Defendants for retaliating against Amaya for filing lawsuits and grievances.

**Count 4:** Eighth Amendment claim against Bailey for subjecting Amaya to cruel and unusual punishment.

**Count 5:** Eighth Amendment claim against Defendants for failing to intervene and prevent Bailey's retaliatory and harassing conduct against Amaya.

**Count 6:** Fourteenth Amendment claim against Defendants regarding placement of Amaya in segregation without due process of law.

**Count 7:** Fourth Amendment claim against Defendants for unreasonable search and seizure of his cell.

**Count 8:** State law claim against Defendants for intentional infliction of emotional distress.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice**

as inadequately pled under the *Twombly*[1] pleading standard.

## Count 1

Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). In order to state a civil conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

Amaya alleges that all seventeen Defendants reached an agreement among themselves to deprive him of his constitutional rights and to protect each other from liability. (Doc. 1, p. 20). He asserts that each of the co-conspirators committed overt acts and were otherwise willful participants in jointly committing the activities described in the Complaint. These general assertions do not sufficiently allege that any of the Defendants agreed to a scheme to deprive him of his rights. The Supreme Court has stated:

> An allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.

*Twombly*, 550 U.S. at 556–557 (2007). *See also Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009) (applying T*wombly* in a civil rights conspiracy claim and affirming dismissal of conspiracy claim resting on conclusory statement that defendants were aiding others in a civil rights violation). As the Complaint only contains parallel conduct on the part of Defendants that Amaya labels as conspiracy, Count 1 is dismissed without prejudice.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

**Count 2**

Amaya claims that the legal work he lost included affidavits of deceased people, two witness statements that are needed to prove his innocence, receipts from an investigation, immigration reports, and other documents. Because he no longer has these documents, his criminal Case No. 12CF1319 and a case in the Illinois Court of Claims, Case No. 22CC1098, have been hindered. (Doc. 1, p. 17-18). He asserts that all Defendants "knew that their conduct, lack of care, and broken bailment would have known that a loss of legal work would have hindered any proceeding whether civil or criminal." (*Id.* at p. 23).

As Bailey is the only Defendant directly involved in mishandling the legal documents, Count 2 will proceed against Bailey who allegedly took Amaya's legal documents on November 4 and 5, 2019, and then intentionally did not include them with Amaya's property when Amaya was transferred to Stateville. *See Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009).

For the reasons stated above, Count 2 will not proceed against the other Defendants. Amaya does not claim that any of the other Defendants were personally involved in the loss of his property, only that they did not properly investigate his grievances and remedy the problem after the legal documents were lost. (*See* Doc. 1, p. 12).

**Count 3**

Amaya claims that in retaliation for filing lawsuits and grievances Bailey took his legal documents, made threats against him, attempted to incite inmates to harm him, refused him a property box for excess legal work, and engaged in on-going harassment. (Doc. 1, p. 14, 17). He asserts that Bailey told him that the officers "here at this facility look after each other and that he would likely get a promotion so [Amaya] should drop [his] lawsuits." (*Id.* at p. 17). This is sufficient for Count 3 to proceed against Bailey.

Amaya has also stated a retaliation claim against Frank. Amaya claims that Frank did not

properly conduct an investigation of his missing property or of the disciplinary report issued in May 2020, and Frank had him placed in segregation under investigation in order to protect Bailey and dissuade Amaya from continuing to complain about staff misconduct. (Doc. 1, p. 12-15, 17, 24). Even though Frank's alleged actions, as pled, may not "independently violate the Constitution," prison employees may not retaliate against an inmate for exercising First Amendments rights. *Ashley v. Seamon,* 32 F. App'x 747, 749 (7th Cir. 2002) (citations omitted). Thus, Count 3 will proceed against Frank.

Amaya's retaliation claims against the remaining Defendants, however, fails. To state a retaliation claim, an inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Amaya does not assert that Defendants retaliated against him, only that they failed to take corrective action after he filed grievances. (Doc. 1, p. 14, 24). "Absent personal involvement in the unconstitutional act itself, no liability will attach." *See Merritte v. Baldwin,* No. 16-cv-1020-NJR, 2017 WL 67599, at *6 (S.D. Ill. Jan. 6, 2017).

## Counts 4 and 5

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Coker v. Georgia,* 433 U.S. 584, 592 (1977)). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Not every risk of harm, however, gives rise to a constitutional liability to protect. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2011). While calculated, malicious harassment without penological

justification may be actionable under the Eighth Amendment, usually "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster*, 803 F. 3d 356, 358 (7th Cir. 2015).

Here, Amaya has not sufficiently pled an Eighth Amendment claim against Bailey for cruel and unusual punishment. Amaya makes the general conclusory statements that he was harassed, retaliated, and threatened by Bailey but only points to three incidences: (1) in 2019 when Bailey intentionally took and withheld his legal property; (2) sometime in 2020 when Bailey revealed confidential information about Amaya to other inmates in an attempt to "incite inmates to harm" him; and (3) in 2021 when Bailey would not give Amaya an extra storage box for his property. (Doc. 1, p. 17). Thus, the actual instances of misconduct by Bailey appear relatively isolated and have not led to any material harm. As such, Count 4 is dismissed without prejudice as to Bailey.

As for Amaya's failure to intervene claim, the Seventh Circuit recognizes "failure to intervene" as a basis for a constitutional violation under the Eighth Amendment. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). However, because the conduct Amaya complains of does not rise to the level of a constitutional violation, he cannot state a plausible failure-to-intervene claim against. Count 5 is also dismissed without prejudice.

### Count 6

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim based on false charges and related to disciplinary proceedings, the Court undertakes a two-part analysis. *Id.* The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

Generally, prisoners "do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary." *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017). *See also Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). A protected liberty interest is triggered only when the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn*, 933 F.3d 705, 721 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *See also Miller v. Dobier,* 634 F.3d 412, 414–15 (7th Cir. 2011). In order to determine if a sentence of segregation amounts to an atypical and significant hardship, the Court looks "to both the duration of the segregation and the conditions endured." *Lisle*, 933 F.3d at 721 (citing *Marion v. Columbia Corr. Inst.*, 559 F. 3d 693, 697 (7th Cir. 2009)).

Here, Amaya has not sufficiently pled a claim for violation of his due process rights regarding his placement in segregation. His time in segregation was only for four months, which is "'not such an extreme term' and, standing alone, would not trigger due process rights." *Marion,* 559 F. 3d at 698 (quoting *Whitford v. Boglino,* 63 F. 3d 527, (7th Cir. 1995)). Amaya does not describe his conditions of confinement during this time or assert that he was subjected to atypical and significant hardships. Further, demotion in grade status does not amount to a liberty interest that requires the protections of due process. *See Hoskins v. Lenear,* 395 F. 3d 372, 375 (7th Cir. 2005). Accordingly, Count 6 is dismissed without prejudice.

**Count 7**

Amaya brings a claim for "illegal search and seizure" and asserts that due to false allegations and an improper investigation, he was subjected to an illegal search of his cell and seizure of property. (Doc. 1, p. 25). The Supreme Court has explicitly held, however, that the Fourth Amendment's prohibition of unreasonable searches and seizures does not apply to those conducted "within the confines of a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). *See also Cannon v. Newport,* 723 F. App'x 344, (7th Cir. 2018). Because Amaya's allegations relate

to the search of a prison cell, he cannot state a claim against Defendants under the Fourth Amendment. Count 7 is dismissed without prejudice.

### Count 8

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that (1) the defendant "engaged in extreme and outrageous conduct;" 2) the defendant either intended to inflict severe emotional distress "or knew there was a high probability that [his] conduct would cause severe emotional distress;" and 3) the defendant's "conduct in fact caused severe emotional distress." *McGreal v. Village Orland Park*, 850 F.3d 308, 315 (7th Cir. 2017) (internal quotations omitted).

Amaya allegations are only a recitation of the elements of the claim, which is legally insufficient. (Doc. 1, p. 22). *See also Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009). Additionally, the Complaint does not contain factual allegations suggesting that any Defendant acted with intent or knowledge that his or her conduct would result in severe emotional distress. Nor is the conduct alleged truly extreme and outrageous. As such, Count 8 will be dismissed without prejudice.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 2** will proceed against Bailey but is **DISMISSED without prejudice** as to the other Defendants. **COUNT 3** will proceed against Bailey and Frank but is **DISMISSED without prejudice** as to the other Defendants. **COUNTS 1, 4, 5, 6, 7,** and **8** are **DISMISSED without prejudice**. Because there are no surviving claims against Thompson, Dennison, John Doe 1, Heck, Kirkman, John Doe 3, John Doe 4, Reid, Rodely, Skorch, Mercier, King, Jeffreys, and Hale, they are **DISMISSED without prejudice**, and the Clerk of Court is **DIRECTED** to **TERMINATE** them as parties.

Although there are no surviving claims against David Mitchell, as the Warden of Pinckneyville Correctional Center, he shall remain a defendant in his official capacity only for the sole purpose of implementing any injunctive relief that may be ordered.

In light of this Order, the motion for status is **DENIED** as moot. (Doc. 9).

The Clerk of Court shall prepare for Bailey, Frank, and Mitchell (official capacity only) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Amaya, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Amaya and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Amaya is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 4, 2023**

   *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.