IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DANIEL AMAYA,** | |
| **Plaintiff,** | |
| v. | Case No. 21-CV-01707-SPM |
| **MAC-SHANE FRANK, et al.,** | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Mac-Shane Frank, Michael Bailey, and Warden John Barwick (in his official capacity only).[1] (Doc. 62). *Pro se* Plaintiff Daniel Amaya filed a Response (Doc. 64), to which the Defendants filed a Reply (Doc. 65). Having been fully informed of the issues presented, the Defendants' Motion for Summary Judgment is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

*Pro se* Plaintiff Daniel Amaya is an inmate presently incarcerated at Illinois River Correctional Center in Canton, Illinois. (*See* Doc. 1). The instant suit arises from the loss of legal materials belonging to Plaintiff Amaya while he was incarcerated at Pinckneyville Correctional Center—he claims that Defendants Frank (a Lieutenant with Internal Affairs) and Bailey (a Correctional Officer) intentionally

---

[1] As the Government indicates, Pinckneyville Correctional Center Warden Barwick is the successor in interest to Warden David Mitchell. (*See* Doc. 62, p. 1 n.1). Warden Barwick was added to this lawsuit in order to carry out any injunctive relief ordered by the Court. (*See id.*, p. 1).

mishandled them in retaliation against him. (*See* Doc. 1, pp. 12, 14, 17–18, 23; Doc. 10, pp. 8–9 (citing the same)). Plaintiff Amaya alleges that the lost materials included affidavits of individuals now deceased, two witness statements, receipts from an investigation, immigration reports, and various other materials. (*See* Doc. 10, p. 8 (citing Doc. 1, pp. 17–18)).

Amaya filed a Complaint alleging eight claims against seventeen Defendants on December 17, 2021. (Doc. 1). This Court conducted preliminary review in accordance with 28 U.S.C. § 1915A and dismissed all of Amaya's claims without prejudice except for his First Amendment access to courts claim against Defendant Bailey and his First Amendment retaliation claim against Defendants Bailey and Frank. (*See* Doc. 10). This Court also retained the Warden of Pinckneyville Correctional Center in his official capacity only in order to effectuate any injunctive relief that may be ordered. (*See id.*, p. 13).

The Defendants filed a Motion for Summary Judgment on December 20, 2024. (Doc. 62). Amaya filed a Response on January 17, 2025 (Doc. 64), to which the Defendants filed a Reply on January 31, 2025 (Doc. 65).

## APPLICABLE LAW AND LEGAL STANDARDS

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go

beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). The nonmovant cannot simply rely on its pleadings; the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied,* 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

### I. First Amendment Access to Courts

"The First Amendment right to petition the government for redress of grievances includes the right of access to the courts." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Grossbaum v. Indianapolis–Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1294 n.5 (7th Cir. 1996)). This right extends to prisoners. *Id.* (citing *Cruz v. Beto*, 405 U.S. 319, 321 (1972); *Woodruff v. Mason*, 542 F.3d 545, 561 (7th Cir. 2008) (Posner, J., concurring)). "While the right of access to the courts requires prison officials to provide prisoners with the necessary tools 'to attack their sentences, directly or collaterally,' and 'to challenge the conditions of their confinement,' it is not an abstract, freestanding right to legal assistance." *Id.* (first quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996); then quoting *Lewis* at 351). In order to succeed on an access to courts claim, a prisoner "must submit evidence identifying '(1) a non-frivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a suit or settlement.'" *Jones v. Van Lanen*, 27 F.4th 1280, 1287 (7th Cir. 2022) (*citing Harer v. Casey*, 962 F.3d 299, 308 (7th Cir. 2020); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Moreover, "[a] prisoner asserting a denial of access claim must show an 'actual injury' in the form of interference with a 'nonfrivolous legal claim.'" *Bridges*, 557 F.3d at 553 (quoting *Lewis* at 353). "In other words, the right of access to the courts is tied to and limited by a prisoner's right to 'vindication for a separate and

distinct right to seek judicial relief for some wrong.'" *Id.* (quoting *Lehn v. Holmes*, 364 F.3d 862, 865 (7th Cir. 2004)).

The events in question occurred in November 2019. (*See* Doc. 62, p. 2 (citing *id.*, Ex. A, 11:17–25; 13:4–10)). On November 4, prior to being removed from Pinckneyville Correctional Center on a writ of habeas corpus to Stateville Correctional Center, Plaintiff was removed from his cell and taken to the property office so that he could verify the property that was removed from his cell (as is standard procedure). (*See id.* (citing *id.*, Ex. A, 11:17–25; 12:1–9; 13:4–10; 13:13–14:9; 4:22–15:5)). Plaintiff Amaya states that Defendant Bailey did not verify the presence of each legal document in the one box that was present and insists that he told Bailey that there were three other boxes of legal documents in his cell. (*See id.* (citing *id.*, Ex. A, 15:9–16:12)). Plaintiff Amaya subsequently signed the appropriate property paperwork. (*See id.* (citing *id.*, Ex. A, 16:7–9)). Amaya states that there was also legal documentation in the law library that he was not able to obtain because it was closed for the day. (*See id.*, p. 3 (citing *id.*, Ex. A, 19:17–20:8)). Amaya alleges that he was told by a lieutenant to hold his additional paperwork and that it would be provided to property in the morning; Amaya states that he gave this additional paperwork to Defendant Bailey on November 5, 2019. (*See id.* (citing *id.*, Ex. A, 19:17–20:8; 22:2–16)).

Amaya alleges that, once he arrived at Stateville, he testified that he only received some of his legal paperwork and asked the judge presiding over his hearing to return him to Pinckneyville instead of being remanded to county jail. (*See id.* (citing

*id.*, Ex. A, 25:20–27:2; 48:19–49:1)). Amaya was permitted to proceed on his post-conviction petition and appealed the ruling. (*See id.* (citing *id.*, Ex. A, 49:2–9)). Amaya states that he received most, but not all of his paperwork back when he returned to Pinckneyville; he filed a grievance about his missing property on November 22, 2019. (*See id.*, p. 4 (citing *id.*, Ex. A, 27:12–28:2, 30:9–12; *id.*, Ex. B, pp. 70–71); *see* Doc. 64, Ex. D). The reviewing grievance officer reported that no legal documents were reported on Amaya's property paperwork, but that Amaya did sign for legal papers to be placed in legal storage. (*See* Doc. 62 (citing *id.*, Ex. B, pp. 68–71)). Additionally, when Amaya returned to Pinckneyville, he signed paperwork indicating that there were no discrepancies with his property. (*See id.* (citing *id.*, Ex. B, pp. 68–71)).

Based on the factual details *supra*, Defendant Bailey argues that "Plaintiff's version of facts is blatantly contradicted by the record, so that no reasonable jury could believe it." (*Id.*, p. 7). Bailey insists that "[a]lthough Plaintiff may have lost his post-conviction matter, he cannot show that any actual injury was attributable to his not having specific legal documents at that relevant hearing." (*Id.*, p. 8). In opposition, Amaya argues variously that he lost $25,000 worth of legal work (Doc. 64, p. 2 (citing Doc. 62, Ex. A, 55:13–16)) and that he lost $30,000 worth of legal work (*id.*, p. 64 (citing *id.*, Ex. L)). He argues that his actual innocence claims were dismissed in his post-conviction relief petition, but that his petition was permitted to move forward. (Doc. 62, Ex. A, 46:15–48:17).

In *Nance v. Vieregge*, 147 F.3d 589 (7th Cir. 1998), Judge Easterbrook assessed a similar access to courts claim. In *Nance*, the prisoner sued the prison's properly

clerk after he arrived at Stateville prison missing some of his legal documents, some of which were never recovered. *Id.* at 590. Assuming that the defendant "spitefully misdirected Nance's papers," Judge Easterbrook wrote that "Illinois maintains a system of courts that can provide compensation for torts, and the opportunity to recover damages for a rogue guard's wrongful conduct supplies all of the process that is due. *Id.* at 591 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981*), overruled by Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 531–36 (1984); *Zinermon v. Burch*, 494 U.S. 113 (1990); *Easter House v. Felder*, 910 F.2d 1387 (7th Cir. 1990) (en banc)).

Judge Easterbrook continued, stating that "[w]hat makes an access-to-the-courts claim distinctive is the remedy—equitable relief to restore access, or damages to compensate for the loss of the underlying litigation." *Id.* at 592. Additionally, "[w]hen neither remedy is sought (or appropriate) the access claim should be treated the same way as a simple lost-or-stolen-property claim." *Id.* Notably, *Nance* specifically mentions circumstances where "irreplaceable documents" are lost or where "a claim of actual innocence has been thwarted" as being the core factors involved in an access to courts claim. 147 F.3d at 592. Judge Easterbrook also writes in *Nance* that "it might clarify matters to say that when the only relief sought is the value of missing property the prisoner is not making an 'access' claim at all." *Id.* Moreover, "[i]f the injury in question is losing the underlying case, then *Heck v. Humphrey*, 512 U.S. 477 (1994) . . . holds that a damages remedy that necessarily implies the invalidity of a criminal conviction (or the loss of good-time credits) is

Page 7 of 18

impermissible while that conviction stands." *Id.* at 591 (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)); *see also Hoard v. Reddy*, 175 F.3d 531, 532–33 (7th Cir. 1999) ("The district court dismissed the suit on the authority of *Heck v. Humphrey*, 512 U.S. 477 (1994), which forbids a convicted person to seek damages on any theory that implies that his conviction was invalid without first getting the conviction set aside, which Hoard has not done.").

Amaya argues that the loss of his legal documents resulted in the dismissal of claims in his Illinois Court of Claims case (*see Amaya v. State of Illinois*, 22-CC-1098 (Ill. Ct. Cl. 2023); *see also* Doc. 64, Ex. K) and resulted in adverse action in a post-conviction petition in his original criminal case (*see State of Illinois v. Amaya*, 12-CR-1319 (Ill. Cir. Ct.)). (*See* Doc. 62, Ex. A, 46:15–48:17). That being said, his Complaint expressly seeks "an investigation into all counts, and the return of all seized property or monetary damages for said property." (Doc. 1, p. 26). Moreover, he claims in his Response to the Defendants' Motion for Summary Judgment that "[d]amages are for physical loss of property worth $25,000" (Doc. 64, p. 2 (citing *id.*, Ex. A, 55:13–16)), yet also claims in his Response that $30,000 worth of legal work was lost (*id.*, p. 4 (citing *id.*, Ex. L)). Amaya later claims that "Plaintiff's injuries were caused by the false narrative counselor Rodely and Officer Bailey made that '. . . On the inventory sheet completed on Nov. 4th Offender had zero legal documents to be sent out with his writ bag . . .' [sic]." (*Id.*, p. 5 (citing *id.*, Ex. D)). Amaya alleges that Defendant Bailey's behavior "demonstrates his deception in covering up his misdeeds." (*Id.* (citing *id.*, Ex. A, 27:15–29:13)). He argues that "Defendant Bailey acted maliciously

outside the scope of his employment[,] impeded investigations and was the main cause for the Denial of access to Courts for Plaintiff." (*Id.*, p. 6). He alleges that "[t]he property lost included approximately $25,000 of legal documents . . . include[ing] various reports and investigations including billing information and receipts for services rendered that were needed to prove the $25,000.00 claim in the Court of Claims case." (*Id.*).

Based on Amaya's testimony in his deposition (Doc. 62, Ex. A) compared with his Complaint (Doc. 1) and his Response to the Defendants' Motion for Summary Judgment (Doc. 64), it appears that he is alleging that the loss of his legal documentation impacted both his underlying criminal case (No. 12-CR-1319) and his Court of Claims property case (No. 22-CC-1098). He states in his deposition that he cannot recover some of the documentation that was lost. (*See* Doc. 62, Ex. A, 46:15–49:9). Recall that the Defendants argue that Amaya "cannot show that any actual injury was attributable to his not having specific legal documents at that relevant hearing." (Doc. 62, p. 8). This matter, then, turns on whether Amaya can prove that he suffered a concrete injury due to the fact that the Defendants allegedly failed to send his legal documents to him.

In line with *Nance* and *Hoard*, this Court hold that Amaya's access to courts claims as related to his post-conviction hearing is barred by *Heck*. *See State of Illinois v. Amaya*, No. 12-CF-1319 (Ill. Cir. Ct.). Amaya states in his deposition that he "couldn't proceed with that claim, the actual innocence claim that I had regarding that particular issue." (Doc. 62, Ex. A, 46:17–19). If Amaya intends to argue that his

conviction was invalid, he must have that conviction set aside *before* he can seek damages on that same theory. *See Hoard v. Reddy*, 175 F.3d 531, 532–33 (7th Cir. 1999) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). Regarding his Illinois Court of Claims case, the Illinois Court of Claims opinion (Doc. 64, Ex. K) indicates that the Court of Claims case in question was filed *because of the same loss of property involved in the instant suit*. Put another way, Amaya cannot argue that the loss of the legal documents in question impacted a case in which he brought suit for the loss of those same documents. As an example, if one brought suit seeking damages for a missing chair, one could not argue that the lawsuit was adversely impacted because of the loss of that same chair that provided the legally cognizable injury for the lawsuit in the first place. As Judge Easterbrook wrote in *Nance*, "[the Plaintiff] has two options, which are not mutually exclusive: to seek damages in state court for the value of the photocopies as ordinary personal property, and to initiate a collateral attack or request for pardon concerning the judgment that rests on his guilty plea." 147 F.3d at 592. Amaya has already pursued the first option via his Court of Claims case. *See Amaya v. State of Illinois*, No. 22-CC-1098 (Ill. Ct. Cl. 2023); (*see also* Doc. 64, Ex. K (citing the same)). Thus, unless and until his conviction is vacated, he cannot seek money damages via an access to courts claim.

Therefore, Amaya's First Amendment access to courts claim does not survive the Defendants' Motion for Summary Judgment and must be dismissed.

**II. First Amendment Retaliation**

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter his free speech; and (3) his protected speech was at least a motivating factor for the deprivation." *Id.* (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, 587 U.S. at 398 (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). More "[s]pecfically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (citing *Hartman*, 547 U.S. at 260).

"To prove causation on a First Amendment retaliation claim, a plaintiff may rely on both direct and circumstantial evidence." *Lavite*, 932 F.3d at 1031 (citing *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965–66 (7th Cir. 2012)). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Id.* (quoting *Kidwell*, 679 F.3d at 965). "Circumstantial evidence may include suspicious timing, ambiguous oral or written

statements, or behavior toward or comments directed at other employees in the protected group." *Id.* (quoting *Long v. Tchrs.' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)).

The Defendants insist that Amaya has admitted that Defendant Frank conducted at least two investigations into his complaints about Defendant Bailey's purported retaliation and harassment. (Doc. 62, p. 4 (citing *id.*, Ex. A, 30:13–22)). Amaya stated that he filed grievances against Defendant Bailey every month or every few weeks. (*Id.* (citing *id.*, Ex. A, 39:15–19)). Amaya alleges that Frank retaliated against him, as well. (*Id.* (citing *id.*, Ex. A, 53:21–25)).

On April 24, 2020, Amaya filed grievance 1146-04-20 PNK. (*See* Doc. 64, Ex. E; *id.*, Ex. M, p. 2). He alleged that Defendant Bailey gave him CL-20 headphones as an attempted bribe to prevent Amaya from suing him. (*Id.*, Ex. E). Internal Affairs conducted an investigation and determined that Amaya had falsely accused Bailey of a criminal act. (*Id.*, Ex. F). Amaya was placed on investigative status and received a disciplinary ticket. (Doc. 62 (citing *id.*, Ex. A, 43:1–5)). The investigation determined that the headphones in question were properly logged and forwarded to Amaya from the Pinckneyville Commissary. (Doc. 64, Ex. F). Amaya was found guilty by the Adjustment Committee at Pinckneyville on May 26, 2020. (*Id.*, Exs. G, I). Notably, the inmates Amaya requested to corroborate his narrative "provided no relevant information." (*Id.*, Ex. I). After Amaya filed a grievance, the Administrative Review Board expunged this ticket and removed it from Amaya's record on February 26, 2021. (Doc. 62 (citing *id.*, Ex. A, 44:23–45:4); Doc. 64, Ex. J). Warden Jeffrey Dennison

at Pinckneyville submitted the disorderly conduct investigation of Amaya to the Illinois State's Attorney's Office in Perry County for possible criminal prosecution on August 14, 2024. (Doc. 64, Ex. M; *id.*, Ex. Q, p. 2). On March 7, 2022 The State's Attorney declined the case "due to the current status of the administrative sanctions, etc., against the inmate involved." (*Id.*, Ex. Q, p. 1).

First, filing a lawsuit or grievance to contest prison conditions or treatment is clearly protected by the First Amendment, meaning that Amaya meets the first prong of the test. *See Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). The Defendants do not dispute this fact. (*See* Doc. 62, p. 9). They do argue, however, that "Plaintiff cannot show that he suffered any deprivation that would likely deter First Amendment activity in the future or that his grievances were at least a motivating factor in the Defendants' decision to take any action." (*Id.*). The Defendants insist that Amaya fails to show that any of the alleged retaliation (that "Defendant Bailey took his legal documents, made threats, attempted to incite individuals in custody to harm Plaintiff, refused Plaintiff a property box for excess legal work, and engaged in on-going harassment" (*Id.*, pp. 9–10)) deterred his ability to exercise his First Amendment rights via filing grievances.

Amaya argues that Defendants Frank and Bailey "acted in tandem to protect each others conduct [sic] and to punish Plaintiff for filing grievances and contacting outside agencies." (Doc. 64, p. 8). Amaya argues that "Defendant Bailey and Frank's intimidation attempts worked" because he submitted nine grievances in 2019, forty-

six grievances in 2020, twenty-five in 2021, seven in 2022, and four in 2023. (Doc. 64, p. 11 (citing *id.*, Ex. N, pp. 272–84)). He argues that "Defendant Frank's investigation was conducted with the intentions of harming Plaintiff by charging him criminally, it was meant to deter Plaintiff from filing grievances, communicating with outside sources which would have brought light to the conduct done by Defendants." (*Id.*, p. 10).

The Seventh Circuit assessed a similar retaliation claim in *Jones v. Van Lanen*, 27 F.4th 1280 (7th Cir. 2022). Jones alleged that the defendant prison officer "had a motive to retaliate by seizing the documents from inmate Jackson and thereby lessening the chance of any complaint against him ever hitting a court's docket." *Id.* at 1284. They held that "[w]ithout more, these facts—even when viewed in the light most favorable to Jones—are not enough to survive summary judgment on a First Amendment retaliation claim." *Id.* (citing *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (concluding that a prisoner's verified complaint that provided only "speculation regarding the officers' motive" for destroying his legal documents could not survive summary judgment on a First Amendment retaliation claim)). The Seventh Circuit stated that "[t]o conclude otherwise would risk countenancing the inference that every prison official on the receiving end of a grievance harbors a retaliatory motive against a complaining inmate" and that they were not aware "of [any] authority permitting such a sweeping finding, at least not at the level of generality at which Jones presses the point." *Id.* Jones's claims were able to survive, however, because "[b]uried within the thousand pages of submitted evidence are

sworn declarations from two Green Bay inmates corroborating Jones's account of the retaliatory statements made by [the defendant]." *Id.* at 1284–85.

The same is not true in the instant case. None of the witnesses questioned during the Internal Affairs investigation corroborated Amaya's account of the interaction with Defendant Bailey. (*See* Doc. 64, Ex. I). Amaya does not provide affidavits or sworn testimony from witnesses that corroborate his version of events. Also recall that that Amaya must provide evidence of "a deprivation likely to deter his free speech." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). By the Court's tabulation of Amaya's Cumulative Counseling Summary (Doc. 64, Ex. N), he filed some seventy-five separate grievances between September 2019 and April 2023. Considering the above, Amaya cannot make a colorable argument that his First Amendment rights were restricted such that he could not file grievances when he filed an average of 1.75 grievances per month, even if he filed fewer grievances in 2022 and 2023. Therefore, he has failed to meet the second prong of the analysis.

The Seventh Circuit has noted that "*argument* is insufficient to avoid summary judgment; the nonmoving party needs to come forward with *evidence*." *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012) (citing *Outlaw v. Newkirk*, 259 F.3d 833, 839 n.2 (7th Cir. 2001); *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 361 (7th Cir. 1992)). Amaya has failed to prove the second or third elements of his First Amendment retaliation case—because Amaya has not demonstrated that there are genuine issues

of material fact sufficient to submit his First Amendment retaliation claims to a jury, his second claims does not the Defendants' Motion for Summary Judgment, either.

### III. Qualified Immunity

The Defendants also argue that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (Doc. 62, p. 11 (citing *Harlow v. Fitzgerald*, 457 U.S. 817, 818 (1982))). "Qualified immunity is an affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it." *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020) (citing *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001)). "To overcome qualified immunity, the facts viewed in the light most favorable to [the plaintiff] must 'show that the defendant[s] violated a constitutional right' and that 'the right was clearly established at [that] time.'" *Id.* (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017)). Notably, "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Henry*, 969 F.3d at 785 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "The right must be established not as a general proposition but in a particularized manner so its contours are clear to a reasonable official." *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 665 (2012)).

The Defendants argue that "Plaintiff's description of the issues with Defendants do not support a finding that his constitutional rights have been violated

[because] Plaintiff had meaningful access to the courts and cannot show any actual injury to any of his lawsuits." (Doc. 62, p. 11). They also argue that "Plaintiff cannot show that he suffered any deprivation that would likely deter First Amendment activity in the future or that his grievances were at least a motivating factor in the Defendants' decision to take any action." (*Id.*). They insist that to find otherwise "would establish a new standard for First Amendment access to the courts claim[s]." (*Id.*). Amaya does not address the Defendants' qualified immunity defense in his Response besides stating that "[q]ualified immunity should not attach." (Doc. 64, p. 11).

First, because neither of Amaya's First Amendment claims survive, this Court need not assess whether or not qualified immunity would apply. However, this Court notes that this is not the "rare case" where the Defendants' "conduct was 'so egregious and unreasonable' that the constitutional violation was 'patently obvious' to any reasonable official." *Kemp v. Liebel*, 877 F.3d 346, 354 (7th Cir. 2017) (citing *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000); *Abbott v. Sangamon County*, 705 F.3d 706, 724 (7th Cir. 2013)). As assessed *supra*, even viewed in the light most favorable to him, Amaya's First Amendment claims do not survive scrutiny and, thus, fail the first prong in the qualified immunity analysis. As the Seventh Circuit has held, when a plaintiff fails to prove that his or her rights were not violated, "here is no need to analyze whether it was clearly established." *Holleman v. Zatecky*, 951 F.3d 873, 882 (7th Cir. 2020).

## CONCLUSION

For the reasons set forth above, Defendants Mac-Shane Frank, Michael Bailey, and Warden John Barwick's Motion for Summary Judgment (Doc. 62) is **GRANTED**. This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: May 29, 2025**

                                        **/s/ Stephen P. McGlynn**
                                        **STEPHEN P. McGLYNN**
                                        **U.S. District Judge**